**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CR-20237-GAYLES/SHAW-WILDER**

**UNITED STATES OF AMERICA**

**v.**

**GORDON LOUIS,**

     **Defendant.**

_____/

**UNITED STATES'S OPPOSITION TO THE DEFENDANT'S MOTION FOR**
**DISCOVERY AND FOR AN EVIDENTIARY HEARING ON**
**THE ISSUE OF SELECTIVE PROSECUTION**

The United States responds in opposition to Defendant Gordon Louis's Motion for Discovery and for an Evidentiary Hearing on the Issue of Selective Prosecution (DE 33) (the "Motion") and states as follows:

The Defendant is a convicted felon who previously was sentenced to ten years in federal prison.  And he is not a United States citizen.  For those reasons, he is ineligible to vote.   In 2022—under the previous administration—United States Citizenship and Immigration Services ("USCIS") began investigating the Defendant for suspected voter fraud. That investigation revealed that the Defendant had fraudulently registered to vote, had voted in numerous federal elections without lawful authority, and had lied on a petition for naturalization.  A federal grand jury then returned an indictment charging the Defendant with Casting a False Ballot in violation of Title 52, United States Code, Section 20511(2)(B), Voting by an Alien, in violation of Title 18, United States Code, Section 611(a), and Making a False Statement Related to Naturalization, in violation of Title 18, United States Code, Section 1015(a).

1

The Defendant now makes the extraordinary claim that this prosecution is a violation of his Equal Protection rights. Specifically, he argues that the United States is selectively prosecuting him—not because he is a convicted felon who is now charged with having committed multiple additional federal felonies—but because he is a registered Democrat. And he asks this Court to take the extraordinary step of ordering the United States Attorney's Office to produce discovery and to hold an evidentiary hearing related to his baseless claim.[1] This Court should deny the Defendant's request. The Eleventh Circuit has repeatedly held that a Defendant must meet a "rigorous" and "demanding" standard before a district court can order discovery in this context. The standard is so rigorous that the Eleventh Circuit has affirmed a district court awarding such relief only once—38 years ago—in a case with truly extraordinary facts that are not present here. Other Circuits have never affirmed such orders.

Among other things, the Defendant must show a sufficient number of "similarly situated" individuals who in this case had registered to vote as Republicans, and who had engaged in the same type of conduct, against whom the evidence was as strong or stronger than that against the Defendant, and who has a similarly significant criminal history as that of the Defendant. The Defendant fails to identify a single similarly situated individual. And for that reason alone, the Court must deny the Motion. The Defendant must also show that the Government brought this prosecution with a discriminatory purpose. The Eleventh Circuit has repeatedly noted that a "presumption of regularity" attaches to the Government's prosecutorial decisions, and the Defendant bears a "demanding burden" in overcoming that presumption. The Defendant utterly fails to overcome that burden here, especially where his

---

[1] The Defendant fails to identify the discovery he wants, asking the Court vaguely to "order discovery, and hold an evidentiary hearing on the matter." DE 33 at 9.

whole theory of discriminatory purpose is premised on alleged animus of the current administration, but where this investigation had begun years ago under the prior administration.  In short, the Defendant fails to come forward with any evidence supporting a selective prosecution claim, and this Court must therefore deny his Motion.

## I.    BACKGROUND

The Defendant was born in Haiti in 1974.  He first entered the United States in 1981 on a visitor visa.  He remained in the United States and became a legal permanent resident ("LPR") in 1994.  He is not and never has been a United States citizen.

In connection with his LPR application, the Defendant submitted multiple signed Government forms in which he acknowledged that he was born in Haiti and was not a United States citizen.  However, after he became an LPR, he falsely represented to United States Government officials that he was a United States citizen.  As one example, in 2010, the Defendant was convicted and sentenced to ten years in federal prison for possessing with intent to distribute cocaine in violation of Title 21, United States Code, Section 841(a) and carrying a firearm in furtherance of a drug-trafficking crime in violation of Title 18, Untied States Code 924(c).  In connection with his arrest in that case, the Defendant falsely stated to Pretrial Services that he was a United States citizen and was born in New York.

In 2001, the Defendant registered to vote in the State of Florida despite the fact that he was not a United States citizen.  In 2018—while on Federal supervised release following his prison sentence for the convictions discussed above—the Defendant signed a form in which he acknowledged that he was not allowed to vote due to his felony convictions.  Nevertheless, the Defendant voted in the 2020 general election while he was still on Federal supervised release.

Beginning in September 2022, Florida Department of Law Enforcement ("FDLE") opened an investigation into whether the Defendant had unlawfully voted in the 2020 general election.   In October 2022, USCIS opened a federal investigation into whether the Defendant unlawfully voted. During the course of that investigation, the Defendant admitted to law enforcement that he had voted in the 2020 election and at least one other election. USCIS continued to investigate the Defendant and in March 2025, a Grand Jury returned the Indictment in this case.

## II.     LEGAL STANDARD

Federal prosecutors "retain 'broad discretion' to enforce the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (citing *Wayte v. United States*, 470 U.S. 598, 607 (1985). "They have this latitude because they are designated by statute as the President's delegates to help him discharge his constitutional responsibility to 'take Care that the Laws be faithfully executed.'" *Id.* (quoting U.S. Const., Art. II, § 3; 28 U.S.C. §§ 516, 547).  "As a result, the presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Id.* (citation omitted) (cleaned up). "In the ordinary case, 'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.'" *Id.*

The judiciary ordinarily cannot interfere with a prosecutor's exercise of charging discretion "except in narrow circumstances where it is necessary to do so in order to discharge the judicial function of interpreting and applying the Constitution." *United States v. Brantley*, 803 F.3d 1265, 1271 (11th Cir. 2015) (citing *United States v. Smith*, 231 F.3d 800, 807 (11th

Cir. 2000). After all, "[c]hoosing enforcement priorities is an important part 'of a core executive constitutional function,' and the process is 'not readily susceptible to the kind of analysis the courts are competent to undertake.'" *Smith*, 231 F.3d at 807. "In other words, [courts] are neither authorized nor competent to second guess the government on which among the universe of different crimes should be prosecuted. *Id.* at 811. Despite the broad discretion prosecutors have to make charging decisions, the Due Process Clause of the Fifth Amendment requires that "the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." *United States v. Cannon*, 987 F.3d 924, 937 (11th Cir. 2021) (citing *Armstrong*, 517 U.S. at 464). "Because of the presumption of regularity, a defendant who seeks to establish a claim of selective prosecution in violation of the Constitution carries a 'demanding' burden. *Id.* (citations omitted). "To dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present clear evidence to the contrary." *Id.* (citations omitted). "This requires a showing 'that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Id.*

Discovery on a selective prosecution claim is subject to "a correspondingly rigorous standard." *Id.* (citing *Armstrong*, 517 U.S. at 468). "It requires a defendant to produce 'some evidence tending to show the existence of the essential elements' of a selective prosecution claim—discriminatory effect and discriminatory purpose." *Id.* (citations omitted). To establish discriminatory purpose, a defendant must show the decisionmaker "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* To establish discriminatory effect, the

5

defendant "must show that similarly situated individuals" in a different identifiable group were not prosecuted. *Id.*

## III. ARGUMENT

The Defendant fails to meet the rigorous standard required to show that he was selectively prosecuted in violation of the Due Process Clause of the Constitution. And his failure is not surprising—both the Supreme Court and the Eleventh Circuit have rejected selective prosecution claims and requests for discovery in connection with selective prosecution claims time and again. *See, e.g.*, *United States v. Armstrong*, 517 U.S. 456, 470 (1996) (reversing court of appeals and concluding that defendant failed to make requisite showing to obtain discovery on selective prosecution claim); *United States v. Cannon*, 987 F.3d 924, 950 (11th Cir. 2021) (affirming district court's denial of request for selective prosecution discovery); *United States v. Jordan*, 635 F.3d 1181, 1188 (11th Cir. 2011) (same); *United States v. Quinn*, 123 F.3d 1415, 1426 (11th Cir. 1997) (same); *United States v. Brantley*, 803 F.3d 1265, 1271 (11th Cir. 2015) (affirming denial of selective prosecution claim); *United States v. Smith*, 231 F.3d 800, 811 (11th Cir. 2000) (same); *Wayte v. United States*, 470 U.S. 598, 610 (1985) (affirming court of appeals' affirmance of order denying selective prosecution claim); *United States v. Washington*, 869 F.3d 193, 215 (3d Cir. 2017) ("[N]either the Supreme Court nor this Court has ever found sufficient evidence to permit discovery of a prosecutor's decision-making policies and practices.").[2]

---

[2] Indeed, the only time the Eleventh Circuit has ever found a defendant was entitled to a hearing on a selective prosecution was 38 years ago in *United States v. Gordon*, which the Defendant relies heavily upon. 817 F.2d 1538. In *Gordon*, however, the Government had conceded discriminatory effect, and the Court found some evidence of a discriminatory purpose where a DOJ spokesperson had allegedly stated publicly that the investigations at issue "were part of a new policy brought on by the arrogance on the part of blacks in these counties." *Id.* at 1540. The Eleventh Circuit concluded that "[t]his statement standing alone

### A.     THE DEFENDANT FAILS TO SHOW A DISCRIMINATORY EFFECT

To show a discriminatory effect, a defendant must show that similarly situated individuals were not prosecuted. *See Smith*, 231 F.3d at 809. The Eleventh Circuit has defined a "similarly situated" person for selective prosecution purposes as "one who engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant." *Id.*; *see also Jordan*, 635 F.3d at 1188. The Eleventh Circuit has also held that a defendant's criminal history is relevant to the similarly-situated person analysis. *Jordan*, 635 F.3d at 1188; *Quinn,* 123 F.3d at 1426.

In *Smith*, the Eleventh Circuit made clear just how strictly courts must apply the similarly-situated person analysis. The Court explained that for the defendants there "to establish selective prosecution, they must show that there are other individuals who voted twice or more in a federal election by applying for and casting fraudulent absentee ballots, *and* who forged the voter's signature or knowingly gave false information on a ballot affidavit or application, *and* that the voter whose signature those individuals signed denied voting, *and* against whom the government had evidence that was as strong as the evidence it had against [the defendants]." *Id.* at 811 (emphasis in original). The court further noted that the defendants had to show not only that such similarly-situated people existed but that the

---

would not be enough" but was sufficient to warrant a hearing when coupled with evidence that the Government had targeted only those counties whose leadership was comprised primarily of Black individuals. *Id.* Here, unlike in *Gordon*, there is absolutely no evidence of either discriminatory effect or discriminatory purpose.

Government could prove the relevant similarities beyond a reasonable doubt. *Id.* The court ultimately held that the defendants failed to carry their burden and affirmed the district court's denial of their selective prosecution claim.

Here, the Defendant fails to identify even one similarly situated individual, and for that reason alone, the Court should deny his motion. Here, the Defendant would need to show a sufficient number of registered Republicans whom the Government has not prosecuted who all share the following similarities with the Defendant: (1) non-U.S. citizens, (2) who are convicted felons, (3) who voted in multiple federal elections, (4) who knowingly gave false information on a ballot affidavit or application, (5) who voted while on federal supervised release, (6) and who have criminal histories as significant as the Defendant's, which includes a ten-year federal sentence for possessing with intent to distribute narcotics and carrying a firearm in relation to a drug trafficking offense. And the Defendant would need to show that the comparators committed the charged offenses within the Southern District of Florida and that the Government could prove these relevant similarities beyond a reasonable doubt.

The Defendant fails to identify even one such comparator. Instead, the Defendant offers pure conjecture. He argues that *there must have been* at least one person who registered as a Republican and who voted unlawfully in the Southern District of Florida.[3] *See* Mot. at 5 n.5 ("It is statistically implausible that there are no ineligibly registered voter [*sic*] affiliated to

---

[3] The Defendant also mentions in a footnote that two individuals who had allegedly registered as Republicans had been charged by the State in 2022. *See* Mot. at 5 n.4. As the article cited by the Defendant notes, both individuals lived and voted outside the Southern District of Florida and the defendant does not argue—nor could it—that this Office could have prosecuted either of those individuals. And it bears noting that at least one of those Defendants was acquitted of the State voting fraud charge.

the Republican party in this judicial district."). This argument misses the point for two reasons. First, it is the Defendant's burden to identify similarly situated individuals whom the Government did not charge; he cannot shirk that burden and simply argue that such people might exist. Moreover, the question is not simply whether there exists a registered Republican who voted unlawfully. The question is whether there exists a registered Republican who is "similarly situated" to the Defendant under the test set forth by the Eleventh Circuit in *Smith*. Indeed, the *Smith* Court noted that the magistrate judge who issued the initial report and recommendation in that case made the same mistake the Defendant makes here: namely applying the "similarly situated" test at too high a level of generality. The court explained that "[t]he magistrate judge applied the 'similarly situated' test at too high a level of generality, assuming that anyone who committed any violation of federal law in connection with the same election is 'similarly situated' with Smith and Tyree." *See Smith*, 231 F.3d at 810 n.12. That is precisely what the Defendant is asking this Court to do. The Court should reject the Defendant's invitation to make the same mistake the *Smith* court cautioned against and instead apply the "similarly situated" test as instructed by the Eleventh Circuit.

Recognizing that he cannot identify a single similarly situated individual whom the Government refused to charge, the Defendant instead resorts to citing statistical data. Specifically, he argues that he was able to locate eight voter fraud cases prosecuted in this District in the past five years, and six of those involved prosecutions of individuals registered as Democrat or Independent. *See* Mot. at 4–5. First, this data is incorrect and misleading as there are two pending prosecutions in this District involving individuals who have previously

registered as Republicans.[4]  More importantly, the Eleventh Circuit has held time and again that statistical data like this is irrelevant in selective prosecution claims as it says nothing of whether or not there exist similarly situated people the Government refused to prosecute.  *See Cannon*, 987 F.3d at 937–38 ("Statistical data reflecting the treatment of only one particular group cannot satisfy the discriminatory effect prong because it fails to show that similarly situated persons were treated differently."); *see also Jordan*, 635 at 1188 ("[R]aw statistics regarding overall charges say nothing about charges brought against similarly situated defendants.") (citing *United States v. Bass,* 536 U.S. 862, 864 (2002)).  In sum, the Defendant was required to identify similarly situated Republicans whom the Government refused to charge.  He failed to identify one.  Thus, he cannot show a discriminatory effect, and as such, this Court should deny his Motion.  *See United States v. Smith*, 231 F.3d 800, 813 (11th Cir. 2000) (concluding that the defendants "fail[ed] to prove by clear evidence that there were

---

[4] In one case, the defendant initially registered as a Republican and later as an Independent; in another case, the defendant initially registered as a Republican and later as a Democrat. Like this Defendant, both defendants are represented by the Federal Public Defender's Office. The Government is not providing case citations for these defendants here as these defendants' party affiliations are not reflected on the public docket.  However, the Government can provide additional information about these prosecutions in *camera* should the Court need it.

It is also telling that—as the Defendant notes—"two individuals' party affiliations are unknown to the defense and not publicly available." Mot. at 3.  The fact that this Office does not make a practice of publicly identifying the political affiliation of defendants charged with voter fraud offenses directly contradicts the Defendant's baseless theory that these prosecutions are part of a politically motivated campaign to show that only Democrats commit these offenses.

Finally, the Defendant's five-year timeframe is arbitrary and undermines—rather than supports—the Defendant's argument.  The Defendant's baseless theory is that the current administration—which took office in January 2025—is selectively targeting only Democrats who vote illegally.  The Defendant's contention that a higher percentage of Democrats were prosecuted under the prior, Democratic, administration does nothing to support the Defendant's theory.

similarly situated individuals who were not prosecuted and thereby failed to establish the discriminatory effect prong).

**B.      THE DEFENDANT FAILS TO SHOW A DISCRIMINATORY PURPOSE**

Because the Defendant failed to show a discriminatory effect, this Court should deny his Motion and need not consider whether there was a discriminatory purpose. *See Cannon*, 987 F.3d at 939 ("Because defendants failed to establish discriminatory effect, we need not address discriminatory purpose."). Nevertheless, it bears noting that the Defendant failed to present any evidence of a discriminatory purpose. As noted above, the Government has broad discretion in enforcing criminal laws and a presumption of regularity attaches to their prosecutorial decisions." *Id.* at 936–37 (quoting *Armstrong*, 517 U.S. at 464). Because of that, a defendant alleging a claim of selective prosecution bears a "demanding" burden. *Id.*

Although hard to follow, the Defendant seems to argue that this prosecution is designed to serve some political end. The Defendant notes that in 2024, then-candidate Trump stated publicly that only Democrats commit voter fraud, and so—the Defendant seems to suggest—this Office is targeting only Democrats for voter fraud offenses to confirm that theory. Mot. at 6–7. That theory is demonstrably false and unpersuasive for several reasons.

First, as has already been discussed, the Defendant has presented no evidence whatsoever that the Government refused to prosecute a single similarly-situated Republican. Second, the quotations the Defendant cites from President Trump [Mot. at 6,7] do not say that only Democrats commit voter fraud. In fact, in those quotations, President Trump never mentions Democrats or Independents once; instead he discusses the intersection of immigration policy and election integrity. Third, as noted above, this Office has instituted voter fraud prosecutions against individuals who have previously registered as Republicans.

And fourth, USCIS's voter fraud investigation into the Defendant began in 2022—during the prior administration and well before President Trump made any of the statements the Defendant cites. And USCIS did not selectively target the Defendant; instead, State officials with FDLE first notified USCIS that the Defendant was suspected of having committed voter fraud. *See Cannon*, 987 F.3d at 939 (finding "no evidence of discriminatory purpose" where "[l]aw enforcement did not initially target [the defendants]" and where "instead, they came to law enforcement's attention through" a separate investigation."). In short, this was a run-of-the-mill investigation and prosecution, first begun by the State and later referred to USCIS who then was serving under the prior administration. Thus, the Defendant fails to show any discriminatory purpose.

## IV.    CONCLUSION

Requiring the Government to produce discovery regarding its prosecutorial decisions is an extraordinary request that is inappropriate in all but the most extreme cases. As noted above, both the Supreme Court and the Eleventh Circuit have rejected selective prosecution claims and requests for discovery in connection with selective prosecution claims time and again. And other circuits have never affirmed a district court requiring such discovery. *See United States v. Washington*, 869 F.3d 193, 215 (3d Cir. 2017) ("[N]either the Supreme Court nor this Court has ever found sufficient evidence to permit discovery of a prosecutor's decision-making policies and practices."). There is no basis for such an order here where the Defendant has failed to produce any evidence showing a discriminatory effect or a discriminatory purpose.

For the foregoing reasons, the United States respectfully requests that the Court deny the Motion.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By:   */s/ Timothy J. Farina*
      Timothy J. Farina
      Assistant United States Attorney
      Court ID No. A5503150
      99 Northeast 4th Street
      Miami, Florida 33132
      Telephone: (305) 961-9196
      Email: Timothy.Farina@usdoj.gov

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the

Court and delivered to counsel of record using CM/ECF this 27th day of October 2025.

> /s/ Timothy Farina
> Timothy Farina
> Assistant United States Attorney

14