UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 25-20237-CR-GAYLES

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

GORDON LOUIS,

        Defendant.

_____/

**REPLY IN SUPPORT OF MOTION FOR DISCOVERY AND FOR AN EVIDENTIARY HEARING ON THE ISSUE OF SELECTIVE PROSECUTION**

By showing that voter fraud cases in this district fall entirely along party lines, and by including inflammatory comments by the current administration that only people affiliated with the Democratic party commit voter fraud, Mr. Louis has met his burden "to produce '*some evidence* tending to show the existence of the essential elements' of a selective prosecution claim." *United States v. Cannon*, 987 F.3d 924, 937 (11th Cir. 2021). The Government, in its Response, confirms that all the voter fraud cases prosecuted in this District were brought against individuals registered as Democrat or Independent—with zero cases brought against currently registered Republicans. *See* ECF No. [36] at 10 n. 4. Seven out of eight voter fraud cases were brought since the start of the current administration. As to non-prosecuted cases, Mr. Louis has followed guidance from the Supreme Court and pointed to individual state cases showing Republicans do commit voter fraud in Florida, yet were not federally

1

prosecuted. He has also included statistics to further support this contention. He has plainly met his burden for an evidentiary hearing and discovery on this issue.

## I.      Discriminatory Effect

### A. All Individuals Prosecuted in the District Are Registered Democrat or Independent

Mr. Louis has demonstrated that all of the voter fraud cases brought in the District in the past five years were brought against individuals currently registered as Democrat or Independent.[1] Mr. Louis has therefore made a credible showing that the prosecuted group was improperly selected based on party affiliation.

### B. Individuals Not Prosecuted in Florida Were Republican

Mr. Louis has also shown that individuals not federally prosecuted for voter fraud were registered Republicans, using both individual cases and statistics.

#### 1.  Individual Cases

Mr. Louis has identified cases of individuals registered as Republican, charged with voter fraud by the state of Florida but not charged federally for voter fraud. In doing so, he has followed the guidance of the Supreme Court. The Supreme Court explained that to make a credible showing of differential treatment of similarly

---

[1] The Government specifies in a footnote that "[i]n one case, the defendant initially registered as a Republican and later as an Independent; in another case, the defendant initially registered as a Republican and later as a Democrat" thus establishing all voter fraud cases in the past five years were brought against Democrats. ECF No. [34] at 10 n. 4. Contrary to the Government's assertion, Mr. Louis does not contend "that a higher percentage of Democrats were prosecuted under the prior, Democratic, administration[.]" ECF No. [36] at 10. As made clear in the Motion, "seven out of the eight individuals prosecuted for ineligible voting in the district were *charged after the start* of the current Republican administration on January 20, 2025." ECF No. [33] at 4 (emphasis added). All of them were registered as Independent or Democrat.

situated persons not prosecuted to be entitled to discovery on the issue of selective prosecution, "respondents could have investigated whether similarly situated persons of other races were prosecuted by the State of California and were known to federal law enforcement officers, but were not prosecuted in federal court." *United States v. Armstrong*, 517 U.S. 456, 470, (1996). The Supreme Court did not require these cases to be drawn from the federal district where the case was brought—California has four federal districts—but rather from the state where the district was located.

Mr. Louis has done exactly that, pointing to Florida state cases of Republican voter fraud *not prosecuted* in federal court. Two examples are Nathan Hart and John Boyd Rivers. Mr. Hart and Mr. Rivers, who were barred from voting due to preexisting felony convictions and were alleged to have voted while ineligible in 2020, are similarly situated to Mr. Louis. Other cases of voter fraud perpetrated by Republicans and prosecuted by the state but not federally include the cases of Jay Ketcik, Joan Halstead, John Rider, Charles Barnes and Robert Rivernider Jr.[2]

State cases not federally prosecuted matter even though the Southern District of Florida and the state of Florida do not have exactly the same borders, as they show that there is nothing about the crime that makes it more likely to be committed by

---

[2] Florida voters latest Republicans to be charged with voter fraud, MSNBC, available at https://www.msnbc.com/rachel-maddow-show/maddowblog/florida-voters-latest-republicans-be-charged-voter-fraud-n1285993 (discussing the cases of Jay Ketcik, Joan Halstead, John Rider) (Dec. 15, 2021); Philip Bump, *The Villages sees a voter-fraud outbreak — with a MAGA twist*, The Washington Post, available at https://archive.is/CjMNS#selection-269.0-286.0 (discussing the case of Charles Barnes) (Jan. 5, 2022); Steve Benen, *Another Republican convicted of voter fraud at Florida GOP stronghold*, MSNBC (Dec. 7, 2023), available at https://www.msnbc.com/rachel-maddow-show/maddowblog/another-republican-convicted-voter-fraud-florida-gop-stronghold-rcna128551 (discussing the case of Robert Rivernider Jr.) (Dec. 7, 2023).

one population—Democrats, Independents or Republicans—rather than the other. *See*, *e.g.*, *Armstrong*, 517 U.S. at 469. The existence of Republican voter fraud in the state of Florida, and the fact that all federal voter fraud cases were brought against Democrats and Independents in the district, are "facts sufficient to create a reasonable doubt about the constitutionality of [Mr. Louis's] prosecution." *United States v. Jordan*, 635 F.3d 1181, 1189 (11th Cir. 2011).

### 2. Statistics

In addition to the individual cases, Mr. Louis has also identified statistics in the state of Florida indicating that Republicans also commit voter fraud. For example, in Florida, Texas, Georgia, Virginia, Ohio and Arkansas from 2020 to 2023 "registered Republicans were 23 percent" of charged state voter fraud cases. Justin Jouvenal, *GOP voter-fraud crackdown overwhelmingly targets minorities, Democrats*, The Washington Post (Dec. 20, 2023), available at https://archive.is/DwlsI#selection-799.0-799.219.

The Government is mistaken that all statistics are an improper way to show discriminatory effect. Indeed, "[s]tatistical data *reflecting the treatment of only one particular group* cannot satisfy the discriminatory effect prong because it fails to show that similarly situated persons were treated differently." *United States v. Cannon*, 987 F.3d 924, 937–38 (11th Cir. 2021) (emphasis added). This type of "statistical evidence fails to establish discriminatory effect because it does not demonstrate that similarly situated defendants . . . could have been prosecuted for the same offenses but were not." *Id.* at 938 (citing *Armstrong* and *Jordan*). This is

because "telling the court how many minorities <u>have</u> been prosecuted does nothing to prove how many non-minorities <u>have not</u> been." *Cannon*, 987 F.3d at 939 (emphasis in original).

Data may be insufficient when there are: (1) incomplete data sets on the prosecuted, targeted group, such that the data does not reflect the entirety of the prosecutions brought in the district, *see, e.g.*, *Cannon*, 987 F.3d at 938; and (2) no information on the non-prosecuted, non-targeted group of individuals who *could* be eligible for prosecution, making any comparison between the prosecuted and non-prosecuted group impossible, *see, e.g., Cannon,* 987 F.3d at 938; *Armstrong*, 517 U.S. at 470; *Jordan*, 635 F.3d at 1189. In contrast, Mr. Louis has "produce[d] 'some evidence'" on discriminatory effect by introducing evidence regarding both the prosecuted and the non-prosecuted group, establishing reasonable doubt as to whether he was selectively prosecuted on the basis of political affiliation. *See Cannon*, 987 F.3d at 937.

The case law cited by the Government simply stands for the unremarkable proposition that bad statistics—incomplete or too general—make bad evidence of discriminatory effect. In *Cannon*, the data included the ethnic breakdown of individuals prosecuted in cases handled by the Federal Public Defender's Miami office. This data encompassed only 25 cases out of 60 cases brought in the district and so represented a "fraction of the total number of prosecutions" brought in the district. *Cannon*, 987 F.3d at 938. The statistics were not representative because "these statistics do not include similar cases in the district *not* handled by the Federal Public

Defender's Miami office." *Cannon*, 987 F.3d at 938. In sharp contrast, Mr. Louis has attached data drawn from *all* the prosecutions brought in the district for voter fraud in the last five years. As the Government's response confirms, all were brought against individuals registered as Democrat or Independent.

Similarly, Mr. Louis did not fail to provide information about individuals who could have been prosecuted, but were not—the issue that plagued other cases with insufficient statistics. In *Armstrong*, for instance, there was no information on the non-prosecuted group to make out a credible claim of selective prosecution:

> In support of their motion, [respondents] offered only an affidavit by a "Paralegal Specialist," employed by the Office of the Federal Public Defender representing one of the respondents. The only allegation in the affidavit was that, in every one of the 24 § 841 or § 846 cases closed by the office during 1991, the defendant was black. Accompanying the affidavit was a "study" listing the 24 defendants, their race, whether they were prosecuted for dealing cocaine as well as crack, and the status of each case.

*Armstrong*, 517 U.S. at 459. There, "[t]he study failed to identify individuals who were not black and could have been prosecuted for the offenses for which respondents were charged, but were not so prosecuted[.]" *Id.* at 470.

Similarly, the data attached to Mr. Jordan's motion for evidentiary hearing or discovery on the issue of selective prosecution lacked information about the non-prosecuted group. Mr. Jordan had included information about the prosecuted group under ACCA—93% African American. But he did not include information about non-prosecuted individuals who may have been eligible for ACCA enhancements who were not prosecuted, as he "did not show that a single arrestee who was not prosecuted under the ACCA qualified for such prosecution, much less possessed a

criminal history as substantial as his own." *Jordan*, 635 F.3d at 1189. As such, Jordan had "'not presented 'some' evidence tending to establish selective prosecution,' much less facts sufficient to create a reasonable doubt about the constitutionality of his prosecution." *Id.* A similar issue surfaced in a *per curiam* opinion by the Supreme Court where the Court held that "raw statistics regarding overall charges say nothing about charges brought against *similarly situated defendants.*" *United States v. Bass*, 536 U.S. 862, 864 (2002) (emphasis in original). There, Mr. Bass had pointed to nationwide statistics showing that the US charges black defendants with death-eligible offenses twice as often as white individuals. This was simply too high a level of generality to allow any effective comparison between the prosecuted and the non-prosecuted group. In contrast, Mr. Louis has presented evidence of non-prosecuted individuals involved in the same conduct of voter fraud who *qualified* for voter fraud prosecution but were not prosecuted. Unlike Mr. Louis and those federally prosecuted in the Southern District of Florida, they were registered as Republican.

The information provided by Mr. Louis enables a comparison between the prosecuted group—all Democrats and Independents—and non-prosecuted group engaged in the same conduct—a group that includes Republicans. This is enough to draw a reasonable doubt about the fact that Mr. Louis was selectively prosecuted for allegedly being registered as a Democrat. This is plainly sufficient for Mr. Louis to meet his burden for discovery by showing "a pattern of Government activity in the voting fraud cases that were prosecuted[.]" *United States v. Gordon*, 817 F.2d 1538,

1540 (11th Cir. 1987), *opinion vacated in part on reh'g on other grounds*, 836 F.2d 1312 (11th Cir. 1988).

### C. Mr. Louis Has Met his Burden to Obtain Discovery and an Evidentiary Hearing on Selective Prosecution

The Government mistakenly conflates the showing necessary for obtaining discovery on the issue of selective prosecution and that necessary to prevail on a motion to dismiss for selective prosecution. The burden at this stage is "to produce '*some evidence* tending to show the existence of the essential elements' of a selective prosecution claim—discriminatory effect and discriminatory purpose." *Cannon*, 987 F.3d at 937 (citing *Jordan*, 635 F.3d at 1188-89) (emphasis added). The threshold to obtain discovery is "a credible showing of different treatment of similarly situated persons." *Armstrong*, 517 U.S. at 470. The standard is "a facially less rigorous standard for criminal defendants seeking *discovery* on an anticipated selective prosecution claim. Instead of 'clear evidence,' a successful discovery motion can rest on 'some evidence.'" *United States v. Washington*, 869 F.3d 193, 214 (3d Cir. 2017) (emphasis in original). Mr. Louis has successfully pointed to *some evidence* of discriminatory effect (regarding the persons prosecuted and some of the similarly-situated persons not prosecuted) and discriminatory purpose. This is sufficient to obtain discovery and an evidentiary hearing.

The requirement for a similarly situated person identified in *Smith* and cited by the Government arises "in order to establish the[] selective prosecution claim" itself. *United States v. Smith*, 231 F.3d 800, 809, 811 (11th Cir. 2000); *see* ECF No. [36] at 7. In *Smith*, the prosecuted individuals successfully obtained both an

evidentiary hearing and discovery on the issue of selective prosecution prior to filing their motion to dismiss for selective prosecution, which they subsequently lost and appealed to the Eleventh Circuit.[3] At the discovery stage, a prosecuted individual need only "make a 'credible showing' that 'similarly situated individuals … were not prosecuted.'" *Bass*, 536 U.S. at 863. Accordingly, the Government's argument about the lack of a perfectly similarly situated comparator is premature and should be left to the merits of a Motion to Dismiss for Selective Prosecution, if such a Motion is filed. At this early stage, Mr. Louis seeks discovery on the issue of selective prosecution, precisely so that he can identify more individuals similarly situated to him that were not prosecuted and to develop the record regarding the known individuals mentioned above. He has properly made a credible showing as to similarly situated individuals.

## II.    Discriminatory Purpose

Mr. Louis reiterates the arguments made in his Motion in support of a showing of discriminatory purpose. The current administration has consistently asserted that only people affiliated with the Democratic party commit voter fraud, which is untrue. It has accordingly targeted them for voter fraud prosecutions. Earlier comments in the Iowa speech by President Trump quoted in the Motion make clear who he accuses of enlisting undocumented people to vote: Democrats. *See, e.g., Former President Trump Holds Rally in Sioux Center, Iowa*, C-SPAN, Jan. 5, 2024, available at https://www.c-span.org/program/campaign-2024/formerpresident-trump-holds-rally-

---

[3] *Jordan* similarly dealt with the lack of similarly situated comparators on the merits of the motion to dismiss for selective prosecution. *See United States v. Jordan*, 635 F.3d 1181, 1189 (11th Cir. 2011).

in-siouxcenter-iowa/636609 (last accessed November 3, 2025) ("Biden and the radical left democrats lie to us because they know that Americans can't stand the truth about them because they know how badly they are doing…"). Further, Mr. Louis's prosecution clearly occurred after the start of the current presidential administration: Mr. Louis was indicted on May 22, 2025. The timing of his prosecution is consistent with the discriminatory pattern of prosecutions by the current administration and the discriminatory purpose explicitly stated by President Trump.

### III. Discovery and Hearings on the Issue of Selective Prosecution Are Often Granted

In addition, motions for discovery and/or evidentiary hearings on the issue of selective prosecution are granted in numerous instances, including in many cases cited by the Government in its Response. As discussed above, the district court in *Smith* had granted a multiple-day long evidentiary hearing and discovery on the issue of selective prosecution. *See Smith*, 231 F.3d at 806. In *Wayte v. United States*, the Supreme Court considered the merits of a motion to dismiss on the basis of selective prosecution after the District Court had already granted a hearing and discovery on the issue of selective prosecution. 470 U.S. 598, 604 (1985) ("After a hearing, the District Court for the Central District of California granted petitioner's broad request for discovery and directed the Government to produce certain documents and make certain officials available to testify.") Similarly, in *United States v. Quinn*, the Eleventh Circuit affirmed the district court's decision not to grant further discovery on the issue of selective prosecution *after* the district court held "an

10

entire day hearing testimony and argument on the selective prosecution discovery issue." 123 F.3d 1415, 1426 (11th Cir. 1997). It was only after this hearing that the court denied additional discovery. Finally, the Third Circuit case cited by the Government for the proposition that "neither the Supreme Court nor this Court has ever found sufficient evidence to permit discovery of a prosecutor's decision making policies and practices" *did* vacate the district court's denial of discovery and remanded the case for a new consideration of whether discovery on the issue of selective enforcement was warranted, after loosening the standard for discovery on selective enforcement claims. *United States v. Washington*, 869 F.3d 193, 215 (3d Cir. 2017).

Discovery and an evidentiary hearing on the issue of selective prosecution are simply not as rare as the Government intimates. Mr. Louis merely seeks what other prosecuted individuals have obtained before him: the discovery and evidentiary hearing to further investigate his likely selective prosecution. As discussed above, he has plainly met his burden to obtain both.

WHEREFORE, Mr. Louis, through counsel, respectfully requests that the Court grant this motion, order discovery, and hold an evidentiary hearing on the matter.[4]

Respectfully submitted,

HECTOR A. DOPICO
FEDERAL PUBLIC DEFENDER

By: /s/ Helene Barthelemy
    Helene Barthelemy
    Assistant Federal Public Defender
    Florida Bar No.: 1044459
    150 W. Flagler Street, Suite 1700
    Miami, Florida 33130-1556
    Tel: (305) 530-7000
    E-mail: Helene_barthelemy@fd.org

---

[4] As noted in the Motion, Mr. Louis seeks documents relating to the voting fraud cases the Government has prosecuted and any voting fraud complaints they have decided not to pursue, internal communications relating to voter fraud cases, as well as an evidentiary hearing on the matter.

12

## CERTIFICATE OF SERVICE

I HEREBY certify that on **November 3, 2025**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:   */s/ Helene Barthelemy*
Helene Barthelemy

13