**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 25-CR-20237-DPG/DSW**

**UNITED STATES OF AMERICA,**

**v.**

**GORDON LOUIS,**

**Defendant.**

_____/

**ORDER ON DEFENDANT'S MOTION FOR DISCOVERY AND FOR AN**
**EVIDENTIARY HEARING ON THE ISSUE OF SELECTIVE PROSECUTION**

**THIS CAUSE** is before the Court on Defendant Gordon Louis's Motion for Discovery and

for an Evidentiary Hearing on the Issue of Selective Prosecution ("Motion") [ECF No. 33].[1] Upon

thorough and careful consideration of the parties' filings[2] and their arguments at the hearing held

on November 19, 2025, the undersigned hereby **DENIES** the Motion for the reasons outlined

below.

## I.   BACKGROUND

Defendant Gordon Louis ("Defendant") is a registered Democrat who is ineligible to vote

in the United States for two reasons: he is a convicted felon, and he is not a United States citizen.

[ECF Nos. 36 at 3; 39 at 7]. In May 2025, after President Donald Trump was inaugurated,

Defendant was indicted in the Southern District of Florida for casting a false ballot in October

---

[1]     The Honorable Darrin P. Gayles, United States District Judge, referred this Motion to the undersigned for disposition. [ECF No. 34].

[2]     The Motion, the Government's Response, [ECF No. 36], Defendant's Reply, [ECF No. 39], Defendant's Notice of Filing Supplement in Support of Motion for Discovery on Selective Prosecution, [ECF No. 43], the Government's Response to Defendant's Notice of Supplement, [ECF No. 44], and Defendant's Reply, [ECF No. 45].

2020 in violation of 52 U.S.C. § 20511(2)(b) (Count I), voting by an alien in October 2020 in violation of 18 U.S.C. § 611(a) (Count II), and false statement related to naturalization in October 2023 in violation of 18 U.S.C. § 1015(a) (Count III). [ECF No. 3].

Defendant contends that "since the beginning of President Trump's administration, no individual registered as a Republican was charged for voter fraud in the district," even though "[i]neligible voters registered as Republicans do exist in the state of Florida." [ECF No. 33 at 4–5]. Defendant asserts that his voter fraud indictment is a result of selective prosecution, which he claims is based on his affiliation with the Democratic Party. *See id.* at 1. Defendant seeks discovery and an evidentiary hearing in support of his selective prosecution claim. *See generally* [ECF No. 33].

## I.      **LEGAL STANDARD**

Federal prosecutors have "broad discretion" in enforcing criminal laws because they fall within a "special province" of the executive branch and must assist in ensuring the faithful execution of the nation's laws. *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quotation marks omitted); *accord United States v. Cannon*, 987 F.3d 924, 936–37 (11th Cir. 2021). As such, a strong "presumption of regularity" supports prosecutors' decisions. *United States v. Smith*, 231 F.3d 800, 807 (11th Cir. 2000). However, prosecutorial discretion is subject to "constitutional constraints." *Cannon*, 987 F.3d at 937. "One of these constraints, imposed by the equal protection component of the Due Process Clause of the Fifth Amendment, is that the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.*

A defendant who seeks to establish a claim of selective prosecution in violation of the Constitution carries a "demanding" burden. *Smith*, 231 F.3d at 807 (quoting *Armstrong*, 517 U.S.

2

at 463); *United States v. Jordan*, 635 F.3d 1181, 1188 (11th Cir. 2011). "[T]o dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present clear evidence to the contrary." *Smith*, 231 F.3d at 807. This requires showing that the federal prosecutorial policy at issue had a discriminatory effect and was motivated by a discriminatory purpose. *Cannon*, 987 F.3d at 937.

Discovery on a selective prosecution claim is subject to a "correspondingly rigorous standard." *Id.* A defendant must produce "'some evidence tending to show the existence of the essential elements' of a selective prosecution claim—discriminatory effect and discriminatory purpose." *Id.* Similarly, to obtain an evidentiary hearing on a selective prosecution claim, "the defendant must present facts sufficient to create a reasonable doubt about the constitutionality of a prosecution." *Jordan*, 635 F.3d at 1188.

## II.     DISCUSSION

### A. Defendant Does Not Make a Sufficient Showing that the Government's Prosecutorial Policy Had a Discriminatory Effect.

To obtain discovery in support of a selective prosecution claim, a defendant must show discriminatory effect by presenting some evidence that is sufficient to make a "credible showing" that "similarly situated individuals were not prosecuted." *Armstrong*, 517 U.S. at 470; *Jordan*, 635 F.3d at 1188. As the Eleventh Circuit has explained:

> [A] "similarly situated" person for selective prosecution purposes [is] one who engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant.

> *Jordan*, 635 F.3d at 1188; *see also Smith*, 231 F.3d at 810.

3

Under this standard, the Court must consider whether Defendant has met his burden of showing discriminatory effect by submitting some evidence of a similarly situated person that satisfies the following criteria: (1) the person cast a false ballot (Count I); and (2) the person was a non-citizen (Count II).[3] Defendant is also a convicted felon and allegedly voted as a felon. As such, this Court must also consider whether the proposed comparator is also a convicted felon. *See Smith*, 231 F.3d at 812 (finding that the government can legitimately place a higher priority on prosecuting someone who has a criminal history).

Defendant contends that he has met his burden of showing some evidence of discriminatory effect by demonstrating that all voter fraud cases filed in this district in the past five years were filed against individuals who were registered as Democrats or Independents. [ECF No. 33 at 4]. Defendant also contends that there were registered Republicans who committed voter fraud in the state but who were not federally prosecuted. *See id.* at 5. In his Notice of Filing Supplement in Support of Motion for Discovery on Selective Prosecution, [ECF No. 43], Defendant submitted examples of federal charging documents for every voter fraud case brought in the Southern District of Florida since January 1, 2020. *Id.* at 2–5. While this information may establish, as Defendant contends, that the Government has solely exercised its prosecutorial discretion to pursue Democrats and Independents for voter fraud in this district, it is not sufficient evidence to prove discriminatory effect. "Statistical data reflecting the treatment of only one particular group cannot

---

[3]     Defendant was also charged with making a false statement related to naturalization (Count III), which is not relevant to identifying a similarly situated comparator. Defendant seeks discovery and an evidentiary hearing on the issue of selective prosecution on the basis that the Southern District of Florida's prosecutorial policy on *voter fraud* had a discriminatory effect and a discriminatory purpose on individuals unaffiliated with the Republican party. [ECF No. 33 at 4]. Count III is not a voter fraud charge and therefore is not the "same type of conduct" anticipated by the Eleventh Circuit's standard. *See Smith*, 231 F.3d at 810–11 (finding that the "same type of conduct" related to voter fraud charges).

satisfy the discriminatory effect prong because it fails to show that similarly situated persons were treated differently." *Cannon*, 987 F.3d at 937–38. The relevant inquiry is not whether the Government has only prosecuted Democrat and Independent voters. Rather, Defendant must show that the Government has turned a blind eye to "similarly situated" Republicans who have also committed voter fraud. *See Jordan*, 635 F.3d at 1188.  The federal voter fraud indictments against Democrats and Independents do not support Defendant's burden and do not constitute "some evidence" of discriminatory effect.

Defendant also identifies "cases of individuals registered as Republican, charged with voter fraud by the state of Florida but not charged federally for voter fraud." [ECF No.  39 at 2]. The Notice of Filing contains ten examples of Florida state court cases where registered Republicans were prosecuted for voter fraud. *See* [ECF Nos. 43 at 5–10; 43-3]. Defendant also submitted an article from the Washington Post,[4] which published statistics showing that from 2020 to 2023, "'registered Republicans were 23 percent' of charged state voter fraud cases." [ECF No. 39 at 4]. Defendant is correct that this is evidence that there are registered Republican voters who have committed voter fraud in Florida, yet none have been federally prosecuted in the Southern District of Florida.  But this is not the threshold Defendant must meet to obtain selective prosecution discovery in this case. It is not enough for Defendant to show that there are Republican voters in Florida who have committed voter fraud and were not federally prosecuted. Defendant must show that there are "similarly situated" Republican voters who are non-citizen felons who cast a false ballot.  As the court explained in *Jordan*, the requirement that the "similarly situated" person commit the same basic crime in substantially the same manner as the defendant is necessary to

---

[4]   Justin Jouvenal, *GOP voter-fraud crackdown overwhelmingly targets minorities, Democrats*, The Washington Post, Dec. 20, 2023, available at https://archive.is/DwlsI#selection-799.0-799.219.

show that "any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan." *Jordan*, 635 F.3d at 1188.

Defendant offers the following Republican voters who were prosecuted in Florida state court for voter fraud as comparators: Robert Rivernider, Jr., Nathan Hart, John Boyd Rivers, Jay Ketcik, Joan Marie Halstead, Kevin Bolton, Cheryl Hall, Benjamin Paris, Charles Barnes, and John Rider. [ECF No. 43 at 5–10]. The information that Defendant provided does not show that any of these Republican voters cast a false ballot *and* were a non-citizen *and* were a convicted felon.[5] As such, Defendant's state court examples, like the federal court examples, miss the mark of the relevant inquiry. Absent some evidence of similarly situated persons who have not been prosecuted, Defendant cannot show discriminatory effect and therefore is not entitled to discovery or an evidentiary hearing on selective prosecution. *See Jordan*, 635 F.3d at 1189 (finding that the defendant was not entitled to an evidentiary hearing or discovery on his claim for selective prosecution because the defendant failed to identify a similarly situated comparator).

---

[5]     With respect to the state court prosecutions, the Government asserts that the cases filed outside of this district are not sufficient evidence of discriminatory effect of the prosecutorial policy implemented by prosecutors in the Southern District of Florida. Defendant argues that the court in *Armstrong* did not require comparators to be drawn from the same federal district where the case was brought, citing, "[R]espondents could have investigated whether similarly situated persons of other races were prosecuted by the State of California and were known to federal law enforcement officers, but were not prosecuted in federal court." *Armstrong*, 517 U.S. at 470. Given that none of the state court Republican defendants are "similarly situated" the location of their prosecution does not weigh into the Court's analysis here and therefore the Court does not need to resolve this dispute.

**B. Defendant Does Not Make a Sufficient Showing that the Government's Prosecutorial Policy had a Discriminatory Purpose.**

Because Defendant has failed to show discriminatory effect, the Court need not address discriminatory purpose, but will do so to complete the analysis. *See Cannon*, 987 F.3d at 939 ("Because defendants failed to establish discriminatory effect, we need not address discriminatory purpose."). To satisfy the discriminatory purpose prong, a defendant must show the decisionmaker "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Jordan*, 635 F.3d at 1188.

Defendant directs this Court to several public statements made by the Government around the time of his indictment. He contends these statements demonstrate that the Government, under the current administration, has adopted a prosecutorial policy to target Democrat and Independent voters. Defendant proffers the following campaign speech by Donald Trump evidences a policy to target Democrat voters for voter fraud prosecution:

> And a lot of these illegal immigrants coming in, they're trying to get them to vote. They can't even speak English. They don't even know what country they're in practically. And these people are trying to get them to vote. And that's why they're allowing them to come into our country.[6]

[ECF No. 33 at 7].

Defendant also provided a similar statement by President Trump during a different campaign speech, where President Trump referred to former President Joseph Biden and the "radical left democrats" who "lie to us because they know that Americans can't stand the truth

---

[6]    *Republicans' non-citizen voting myth sets stage to claim stolen election*, The Guardian, available at https://www.theguardian.com/us-news/2024/oct/03/trump-republicans-non-citizen-voters-myth-stolen-election.

about them because they know how badly they're doing."[7] [ECF No. 33 at 6]. Finally, Defendant relies on a YouTube video[8] from Immigration and Customs Enforcement's ("ICE") account that describes and highlights Defendant's arrest. In the video, the narrator states that Defendant is a "Haitian national and a convicted aggravated felon" who was arrested "for unlawful voting and casting a false ballot." *Supra* note 8; [ECF No. 33 at 7–8]. The video, however, does not refer to Defendant's political affiliation. *See supra* note 8.

In *U.S. v. Gordon*, 817 F.2d 1538, 1540 (1987), the court found that the Government's explicit statement that it was undertaking investigations as part of a "new policy . . . brought on by the 'arrogance on the part of blacks' in these counties" was sufficient to establish discriminatory purpose. The statements Defendant relies on here to establish discriminatory purpose do not rise to the level of the statements in *Gordon*. Moreover, there is no express reference to any policy or plan aimed at targeting Democrats or Independents for voter fraud prosecution in the campaign speeches or the social media post. Therefore, the Court finds that these statements alone are not sufficient evidence that the Government's prosecutorial strategy in voter fraud cases was adopted merely for a discriminatory purpose.

Defendant also provided Executive Order 14248 from March 25, 2025, entitled "Preserving and Protecting the Integrity of American Elections," indicating that the Attorney General shall prioritize the enforcement "of 18 U.S.C. 611 and 1015(f) and similar laws that restrict non-citizens from registering to vote or voting[.]" [ECF No. 43-4 at 4] (emphasis added). The Executive Order,

---

[7]     *See Former President Trump Holds Rally in Sioux Center, Iowa*, C-SPAN, Jan. 5, 2024, available at https://www.c-span.org/program/campaign-2024/former-president-trump-holds-rally-in-sioux-center-iowa/636609.

[8]     *See Watch #ICE Miami arrest a Haitian permanent resident for voter fraud*, YouTube, https://www.youtube.com/shorts/U7i99hPIqQM.

however, does not support a showing of a discriminatory purpose. In *Smith*, the Eleventh Circuit instructs that the Government is entitled to set forth its prosecutorial policies. 231 F.3d at 808, 811. Here, the Executive Order makes no reference to targeting Democrats. To the contrary, the Executive Order establishes that the current administration has adopted a policy and plan to prosecute voter fraud cases involving non-citizens. "The Supreme Court has noted 'the Government's enforcement priorities' as a factor that could legitimately distinguish between those who are prosecuted and those who are not." *Smith*, 231 F.3d at 811 (citing *Armstrong*, 517 U.S. at 465). The court is not authorized to "second guess the government on which among the universe of different crimes should be prosecuted." *Id*. A prosecutorial policy that is based on a legitimate and justifiable standard does not run afoul of constitutional restraints on prosecutorial discretion. *See Cannon*, 987 F.3d at 937–38; *Smith*, 231 F.3d at 808.

For these reasons, Defendant has not met his burden to provide sufficient evidence to overcome the presumption of regularity in prosecutorial decisions set forth in *Armstrong* or to create a reasonable doubt about the constitutionality of his prosecution. Therefore, Defendant is not entitled to discovery or an evidentiary hearing on his selective prosecution claim.

### CONCLUSION

For the reasons set forth above, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 25th day of March 2026.

_____
**DETRA SHAW-WILDER**
**UNITED STATES MAGISTRATE JUDGE**

cc:     The Honorable Darrin P. Gayles
        All Counsel of Record

9